Case number 17-3964, Cameron North v. Cuyahoga County, et al. Ms. Green, you may proceed for the appellant. Good morning, and may it please the Court, my name is Jacqueline Green, and I, along with Attorney Terry Gilbert, represent the appellant, Mr. Cameron North, in this matter. Judge Clay, I'd like to reserve three minutes for rebuttal, please. All right. Thank you. This case is about a 20-year-old kid who was in the custody of Cuyahoga County in their jail. He ultimately suffered a stroke and an aneurysm due to untreated endocarditis, leading to months in the hospital and a long rehabilitation. He still has permanent disability on his left side as a result of this untreated condition. This happened because the county jail's medical system, both with respect to medical staff and correctional staff, and the practices, the customs, and the training in the jail, was designed and carried out in such a way that it was predictably set up to fail and to violate constitutional rights in cases like Cameron North's. This Court should reverse the decision of the District Court and the grant of summary judgment to the county for three reasons. First, the District Court erred in finding that the Monell claim against the county failed automatically simply because the court held that the two named defendants were only negligent, while failing to account for the constitutional violations by many other county actors. Secondly, a constitutional violation did, in fact, occur here as a result of the county's systemic deliberate indifference to constitutionally adequate delivery of medical care to inmates, as a result of the constitutional violations by unnamed defendants in this case, and as a result of constitutional violations committed by Nurse Practitioner Miralovich and Nurse Clack as well. And third, the county was indeed the moving force behind the constitutional violations suffered by Cameron North. The court in this case did not view the evidence in a light most favorable to the non-moving party as is required, and a large body of evidence in this case does show this widespread, systematic set of county customs and policies and practices that gave rise to a mess of a health care system for inmates generally, and specifically in the case of Cameron North. The county has yet to counter this evidence in its briefing at summary judgment and before this court, and the District Court simply did not address this broader body of evidence in its decision. There are disputed material facts, and Cameron North is entitled to have a jury hear his case against the county at trial. So turning first to the facts of what happened to Cameron North in this case, he was in jail in February 2013 as a result of a probation violation. When he first showed up and over the first few months, there were some medical issues that arose, but the key period of time really comes down to around May 7th or 8th through May 13th when he had the stroke. Before May 8th, sometime before this, he testified, Cameron testified, that he did indeed request to go to the medical unit to correctional officers. He submitted a kite. Why are those, are the earlier claims, do you concede that the March claims perhaps are time barred? We do not concede that any of the claims actually in this case leading up to the point of the stroke are time barred. And plaintiff has always maintained the position, first of all, that of course whatever happened May 12th or 13th is totally clear. But anything that happened before that is also safe. And the reason for that is that the doctrine, the continuing violation doctrine, as well as the discovery rule apply here. So first the discovery rule, Cameron was a 20-year-old kid. He was not sufficiently capable of acknowledging or recognizing in himself serious medical issues in need of attention. And under the discovery rule, until his stroke then, the claim would not have accrued at the point that he would have discovered that he had a cause of action. Under the continuing violation doctrine, everything that happens before the May 12th filing date of this case, a continuous violation exists if the defendants engage in continuing wrongful conduct, the injury to the plaintiff accrues continuously, and had defendants at any time ceased their wrongful conduct, further injury would have been avoided. And we know in this case, per Dr. Mendel's expert report, that in fact the big thing here is this testing that was supposed to have been done. It was ordered on May 8th. It was never completed. Had the testing been done, Cameron North would have been sent to a hospital and the testing would have revealed information that would have required and ended up with further evaluation and opportunity for treatment. But he was deprived of that opportunity repeatedly and by actors throughout the jail. But you made this continuing violation argument below to the district court. The district court rejected it. And that appears nowhere in your opening brief to this court. So haven't you forfeited that argument for appeal? We have not, Judge. Our position has always been that in fact the statute of limitations was not an issue here, and the county did raise it as a defense, but ultimately this case is all about a constitutional violation that happened. If a constitutional violation claim is time barred, then? Well, it's not time barred at a minimum for May 12th and 13th. We're clear on that. There was a continuing course of conduct that existed on May 12th and 13th where Cameron North was continuously deprived of care, and that is within the period of time that fell within the statute of limitations. So that is absolutely fine. Did you raise that claim in your opening brief to our court? Yes, we do. We talk about the whole period of time, the May 8th through 13th period. You talk about the whole period of time, but you don't argue that the claim is not time barred. Well, the district court's below, and you didn't appeal one. Well, what we appealed was the fining against the county, and that the court disposed of our claim against the county with one sentence, saying that what these two people did, Nurse Practitioner Maralovich and Nurse Clack, did was negligent, and then therefore your Monod claim is also dead. And that's just simply not the case. We dealt with a whole load of conduct by many, many other actors leading up until that point in time. The district court didn't address those individuals, didn't address their conduct on May 8th through May 13th or any period before that. And because we're talking about this broader set of evidence than just those two individuals, we are safe and within certainly at least that May 12th and 13th period. But under Hurd v. Sheehan, which is a Seventh Circuit case that illustrates the continuing violation doctrine well, there's this concept that the ongoing failure to treat a medical condition as a continual violation when it would be unreasonable to require or even permit a plaintiff to sue separately over every incident of the defendant's unlawful conduct. And that's what we have here in this case. Cameron North made multiple requests to correctional officers. They did nothing. They knew about this over a period of days. They continued to do nothing. He can't bring a claim. This is in the May 8th period. This begins before May 8th and continues all the way through May 13th because on May 12th and 13th, for example, Cameron North is not working. He's in the trustee pod, not going to his job. The correctional officers are aware every day there is a call down. And in the logs that we have, there are calls from the medical unit to the correctional pod officers saying, Cameron can't go to work today due to medical issue. He testified that he was talking to these correctional officers about his need to get blood tests and that no one was then calling to send him to the medical unit. He was talking about his pain. No one was calling to the medical unit on behalf of him for that. And so within that May 12th, 13th period, that's the medical staff. Sorry, the correctional staff. We also have in that period and before this situation with medical staff where this testing has been ordered. So on May 8th, Cameron North goes to the medical unit, sees Nurse Practitioner Miralovic who testifies that this situation, this medical condition requires further evaluation. He knows this. This is why he orders the tests. And it is clearly established that tests that has been ordered, treatment that has been deemed necessary by a physician, if it's not provided and not provided in a timely manner, then a constitutional violation has occurred. And in fact, this testing never happens. On May 9th. How do you respond to the claim that he hid his illness and that he said, I don't need treatment, or at least for sure at the earlier March ones, he indicated he didn't want to be treated. Well, he was fearful initially of losing his trustee status and the danger and the jail that that might expose him to in the general population. When is your position that he moved away from that and then began to seek that medical care that was then not provided continually? Sure. So his fear is evident throughout the phone calls in this case, but also his interest in treatment is clear. He testifies that in advance of May 8th, he begins asking for medical care and sends a kite. And in addition to that, he then has had this care ordered, doesn't get it, continually talks to correctional officers. They're joking about the discontinuation of his trustee status, sending him to the general population with the notoriously violent prison gang, the Heartless Felons. But he does express clearly to people that he needs care, he wants care. And in fact, the medical unit is aware that he needs care, and what's the most powerful evidence in support of that is not only Nurse Miralovich's order on May 8th, but also on May 10th. And we can assume it's sometime between the night of May 9th and the morning of May 10th, but due to the phone call, I'm assuming it's the morning of May 10th, that Cameron North talks to a nurse. She comes down in the kitchen, he's working there, it's in front of a CO, and she says to him, you know, essentially, what's going on here, why is your mother calling? He, at that point, tries to tell her, and this is his statement repeatedly, I tried, I tried, I tried to say I don't need treatment, but she said, we think it's something serious. And he said, I couldn't talk the lady out of it. He tried, he wasn't able to. The county has the duty here. They knew, the medical unit knew, on a continuing basis, May 8th at the time the test was ordered, continuing into May 10th when this nurse, we, more than one person in that medical unit, knows that there's a serious medical issue. The testing order is outstanding through this entire time, and no one does anything. That nurse who came... What's your best case to show that that is, rises from the level of just absolute negligence to deliberate indifference? Sure. So, there are a number of kind of constitutional standards violated here related to deliberate indifference. And when you can show, a plaintiff can show that grossly inadequate care was provided, the need for treatment is obvious, and the care is so cursory as to amount to no treatment at all, which is what he got in this case. He got ibuprofen. It's akin to no treatment at all. It's a constitutional violation. We also know the principle that failure to conduct tests that a prisoner's symptoms call for rises to the level of deliberate indifference. And there's case law on that in this circuit and across the circuits establishing that principle, and that very clearly happened here and continued over that five-day period every single hour of every single day. Failure to conduct those tests could also constitute an interruption of a prescribed treatment plan. Here, he has been prescribed the testing. It doesn't happen. This is also an established constitutional principle in this circuit under Beretti v. Wiscombe. Who, based on the record, do you believe was responsible for assuring that the tests ordered were actually performed? Well, this is the ultimate challenge of the case, is that Cameron North fell victim to a web of deliberate indifference in the jail. Correctional officers didn't report complaints. The warden knew that this problem existed and did nothing about it. There was a policy, a custom, a sanctioned custom of this. We know, in fact, that in the medical unit itself, the nurse practitioner, the director of nursing, all the nurses, nobody knew whose responsibility it was to make sure testing actually got done. There is no system in place. This is one of the customs of the county at play here, where the buck stops nowhere. It's always somebody else's problem, not mine, and inmates inevitably are going to face constitutional violations in relation to the provision of health care, constitutionally adequate health care under those circumstances. I see that your red light is on unless you want to take some time from your rebuttal time. I would like to save some time for rebuttal, thank you. All right. May it please the Court, Counsel. My name is Brian Gutkoski, and I represent the appellees in this matter. I'd like to focus the Court's attention on three main issues in this case, the first of which, as Your Honors already noted, there's a statute of limitations problem, and it's a glaring one. There is no continuing violation here, and simply because they claim it is without any evidence backing that up doesn't make it a continuing violation. Well, the evidence that they say is that on May 8th, the treating physician or the treating nurse practitioner, Mirolovich, I think is how they pronounced it, ordered a test thinking that there was a sufficient problem that you ought to check the blood and the urine. And then those tests were never performed. Well, there is evidence also that the appellant in this case refused care to nurse. Yeah, there is, preliminarily. Right. But now we're at the guy's waiting for the test, and he tells his mother and grandmother, they're going to come get me today, I think that was May 9th, and they're going to give me the test, and then we'll know what's wrong. And nobody came, and then he asked the guards, and the guards are supposed to be on lookout for the people who are supposed to call him to be tested, and he's not called. So I agree with you, the earlier things problematic is discreet act. But when you begin May 8th, don't you have an ongoing failure to perform the very test that the doctor has said is necessary in this circumstance? Actually, the record in my read of it indicates that he was actually, had a urinalysis at least ordered. We had both ordered, didn't he? Both the blood test and the urinalysis. The question is whether they were ever done. Right. Well, the question is whether or not he was sent down there and actually refused to be further treatment. Yeah, but you have records that always show when there's a refusal of treatment. He had to sign that earlier. There's no refusal of treatment from the May 8th forward that I've seen in the record. Is that incorrect? Your Honor, I do know that there is the refusal form, and it was signed by Mr. North when presented by Nurse Clack. And it's my understanding that not only is there a refusal form in the record, but I just ---- March 27th. Right. March 27th he signed it and said he didn't want to do it, but we're now at May. Right. And also, we also have the evidence of his jail calls where he's telling his mom, look, I'm going to do a ruse here. I'm telling them specifically my arm hurt. I don't have any pain here because he wants to keep his trustee status. Again, my friend on the other side says that's because he doesn't want to be put in the general population, but there's after his deposition testimony says he wanted to be a trustee so he could have the extra food portions and the attending privileges that came with being a trustee. So beyond the statute of limitation problems, which I think Judge Polster completely hit correctly, there was extensive briefing on statute of limitations both when this case started and at the summary judgment stage. And it's our position simply that they didn't meet that to get beyond a statute of limitations before they even start to push the boulder up the hill of deliberate indifference. But beyond the statute of limitations, I've never seen a case like this one where they have simply jettisoned the individual defendants on appeal and attempted to go against the municipality like my friends on the other side are doing in this case. Because what that is is essentially a dodge of the qualified immunity analysis that Judge Stranch, you asked about what's your best case that puts a municipality on notice that this is completely out of bounds. And there simply isn't one. Approximately two years ago, my friends on the other side were here in this building arguing the Arrington Bay case, which arises from a Bedford jail. And this case is in the briefs as well. And Mr. Bay was suffering from delusions and was taken from a Lowe's. But isn't that what the distinction is here? Arrington Bay specifically says there are two different Monell arms of claims. One arm is the deliberate indifference, and that arm relates to failure to train, failure to screen, what some people call personnel cases. And then there's the Monell arm that are policy and custom, and that's Alkiri, Garner, that precede all of this. That's long been case law in this circuit. And in those cases, the rule is you have to have a policy. It has to be connected to that entity. And it has to have caused harm. And isn't that the basis of the claim here? It's a claim that just doesn't pass the summary judgment stage. Well, it may not, but it's still a viable. You don't dispute that it's a viable claim. The question is, can she win? I agree with that. And I think certainly the fact of the matter is Judge Larson also implicated the waiver doctrine, too. What we've done here is taken three pages of briefing at the summary judgment stage before the trial court on the municipality Monell claim, and we've expanded that now to focus solely before this court, 13,000 words, actually more if you can consider the reply brief, solely on claims against Cuyahoga County. And that just doesn't really square with the waiver doctrine. You're supposed to present claims squarely in the trial court. We don't think this issue was preserved, both based on the briefing. The court ruled on it below. It was presented, but it wasn't presented, we believe, in the opening brief, as Judge Larson indicated. So the waiver doctrine is also in play here, too. Are you talking about the statute of limitations or are you talking about the Monell claim? The Monell claim with respect to the qualified immunity issue. I know my friends on the other side want to solely say that qualified immunity can't be applied to Cuyahoga County, but my response to that is simply when you have these factual findings that were made as to the individual defendants, as to the statute of limitations and as to their actions below, we don't think that simply leaving them off, if you will, on the appeal serves to get beyond the qualified immunity analysis on the Monell claim. And finally, as to the deliberate indifference, Judge Stranch, this is a steep burden, and it's one that appellants rarely satisfy, both in the trial court and oftentimes on appeal. Somebody that is seeking to prove deliberate indifference has to show both a significantly serious medical need and has to show that the actors are sufficiently culpable. And we don't think Mr. North has proved either of those. With respect to the sufficiently serious medical need, this isn't a broken bone case. This is a blood disorder case that Mr. North had because he is a drug addict and probably a heroin user and uses intravenous needles. But if it's a blood... Please go ahead. I mean, I'm not sure why that matters. I mean, we're not going to blame the victim here. I don't understand why it matters the cause of his... He can't be determined, and frankly, when he was evaluated, he said, no, I'm fine. My arm hurt before. I know my mom's calling you guys and trying to raise a fuss, but I'm fine. Don't put me out of my trustee status because I want the privileges that I get with that. So number one, it doesn't meet the sufficiently serious... Because sufficiently serious needs to be something that's diagnosed by a doctor. That wasn't happened here. Or two, is readily apparent to a layperson. A blood disorder and an enlarged spleen or an enlarged heart or endocarditis is not something that's immediately apparent to a layperson. Moving on, the actor has to have a sufficiently culpable mind, and that certainly wasn't something we had here. There's no evidence in the record that Nurse Clack, my client, tried to dissuade him from getting care. He signed the form freely. And on the second test, there's nothing that indicates that she dissuaded him from being seen or raising additional issues that he might have. Again, the evidence in the record indicates that he did everything he possibly could to lie to the jail staff and to try to minimize any sort of health issues that he might have. So getting back to the Arrington Bay case, as you were talking, Judge Stranz, in Arrington Bay, the person that died had a mental issue. In this case, there's nothing in the record that indicates Mr. North had any sort of mental issues. And I know my friend on the other side keeps referring to him as a kid. He was over the age of 18. He was 20 years old. He's an adult under our laws of this nation. And he's deemed competent, if he has a problem with his health, to bring those forward. This court has said in the Pike case that prison officials do not have to be mind readers. And that's exactly what the plaintiff appellant in this case is asking my clients to do, is to read mind and look into their crystal ball and somehow determine that even though he's saying, I don't have anything wrong with me, that in fact he does have something wrong with him and he should be sent for further evaluation. That's not the state of the law. There is no law. If he was sent, fair argument, but if he was sent and the doctor said, I think we need a blood test and I think we need a urinalysis, then the doctors indicated that there is concern. And then what type of response is it if the jail does not ever give him the tests that have been ordered by the physician? It doesn't arise to deliberate indifference. Again, he's a presumed competent adult. He's also somebody that can stand up and say, Father Marolevich, the nurse practitioner Marolevich, ordered the test for me and my urine was not collected. Well, evidently he was saying that to the COs. Doesn't the record show that he had asked them about when they were going to come and give him the blood test? My read of the record does not indicate that he was asking the COs about when they were going to give him this blood test. My read of the record, I believe he was indicating that I was doing everything I possibly can not to go to medical. At some point there's no question of that. I think maybe the timing is the issue. Because I think the May 9 and 10 arena, there's evidence that he was asking when the blood test would come. So the question becomes, if a doctor or physician's assistant has said that there is sufficient concern to order these tests and then no one does it, what level does that rise to? What cases do you have that would show that that doesn't rise to deliberate indifference? The one I've been mentioning, too, that my friends on the other side were here on, I think is a perfect example of that does not arise to deliberate indifference. It's simply negligence at worst, which is what Judge Polster said below. And that doesn't arise to an Eighth Amendment violation or Fourteenth Amendment violation. And keep in mind, this Eighth Amendment, Fourteenth Amendment duty arises out of the Eighth Amendment's prohibition against cruel and unusual punishment. That's what we're talking about here. And that was expanded to pre-child detainees, as which Mr. North was here. It is not cruel or unusual for the county to take an inmate at his word that he does not need care. It simply doesn't arise to that level. That's a huge burden. And it's one that frequently... And I'm going to go on and get a blood test and a urinalysis and then to never do it. Again, I push back at the fact that it was never done. What I do know... Do you have anything in the evidence that shows that a blood test was performed? I thought that the record was devoid of that information. There is no record of a blood test being performed, but there is evidence that he was ordered to, as you indicated... And what we do know is maybe he was sent down there and said, no, I don't want it. That's my point. The problem is then he would have signed like he did before. The nurse said, okay, you don't want it? Sign the form. And he didn't. And so that's not in the record. And so that's the question. And your best case, you think, is Arrington Bay? And I think Arrington Bay clearly shows that that doesn't arise to deliberate indifference. When we have somebody that is impaired, that is mentally in psychosis, this court still found that there was qualified immunity as to those jailers. I don't think what we have here arises to even close to what the facts and circumstances were in the Arrington Bay case. And with that, I would simply say that there is no clearly established law that would put my clients on notice that their actions violated the Constitution. And again, the Supreme Court of the United States has indicated on numerous occasions within the past year or two years that that's a requirement that there needs to be either a binding case or a sufficient body of consensus of authority that would put my client on notice that their actions would violate the United States Constitution. And that just did not happen in this case. So with that, if there are no further questions before the court, I would ask that you affirm Judge Polster's decision and find that the county and its employees did not violate Mr. North's rights in this matter. You want to say anything about the Monell issue in terms of whether the county's policies and practices might have contributed to this? Again, the policies and practices were submitted in the record. We had a deposition of their expert who, to my understanding, did not opine as to deficiencies to my client's policies and procedures. What he focused his deposition on, he thought that they weren't followed. And then that goes to, again, the individual defendants and not necessarily the county's policies and practices as a whole. I just don't see anything that would indicate a Monell policies and practices or failure to train obligation here. At bottom, the judge determined there was no constitutional violation in this case, and that ends any sort of corporate liability once it's determined that there's no constitutional violation. All right. Thank you. Thank you. First, the trial judge did not determine that there was no constitutional violation. Second, the Arrington Bay case does not apply here at all. The issue in Arrington Bay was access to mental health care. He did not receive that care in a nine-hour period. Here we're talking about five days. Many nine-hour periods over and over. And in that case, there also were no orders from any medical provider about what should or shouldn't be done. There was no failure to carry out ordered care. So that case doesn't apply. And then to the whole big issue here, it's not up to Cameron Norris to force the county to provide constitutionally adequate care. That is beyond any realm of his possible abilities. And indeed, it's the county's duty to ensure that they provide adequate care. And they failed to train their folks. First, with regard to the correctional staff, they failed to train them on inmate access to care. There were no manuals given or there was no periodic review. Correctional staff are on the front lines of inmate interaction and observation. And there are going to be inmates who can't for whatever reason or won't talk about their medical needs. Correctional officers need to have training on this. Dr. Mendel talked about that. There was none. And there are a number of cases that talk about that failure to train on that issue as being a constitutional violation. Same with regard to medical staff. There was no training on constitutionally adequate medical care provision. A great case with a wonderful quote about this is Shadwick v. Hopkins County that talks about how unless a employer provides the necessary training, nurses lack the knowledge about constitutional consequences of their actions or inactions. And finds ultimately that this gives rise to deliberate indifference. And then the county also had a number of customers. I did not hear a difference between Shadwick and the system in that there was some sort of an initial training period and that the health care providers were not just LPNs. There was a nurse practitioner. Well, in this case that nurse practitioner never even received a manual of the policies for the jail. So he had no training specific to the correctional setting. The nurses also... Some of them had the OPATA training. Many of them did not. There was inconsistencies. They didn't have follow-up training. And there are multiple customs at play. First, the buck stops nowhere problem. Secondly, the correctional officers as gatekeepers to medical care who are non-medically trained personnel making decisions about whether someone has access to medical care is another custom that's unconstitutional. The medical record system in this case was... I'm sorry, your time is about up and I need to get in another question. So you said... I want to go back to timeliness. You said that there are all these other people that the district court didn't address. This was in your opening presentation to us. So I understand that. You focused on a number of different people and the district court didn't address them all. But tell me, who is the person who did something that your client did not know about before May 9th? That's what I can't figure out. The district court said May 9th is the date. Now that was based on Nurse Clack. But as to whom is this claim not time-barred? Tell me one person. Well, it's not time-barred against the county and for all of the conduct of its agents that fall under that umbrella. And then all of the individuals who were not named in this suit, the judge made no finding about whether or not those claims were time-barred with regard to the correctional officers. You have to show me why it's not time-barred, right? And we would argue that the continuing violation, which you presented to the trial court, which the trial court rejected, which you didn't raise in your opening brief to this court. Well, the county raised that as a defense in our arguments about all of the other actors at play here, and so we responded to that in our reply brief. And again, the trial court always found that at least May 12th and 13th were in the safe harbor. And the days leading up to that, with regard to Clack and Maralovich, were perhaps not. And obviously that's what the trial court found, and our position has always been that that was not the case. But for everybody else that was not named, the judge did not make a finding with regard to them. And so I guess if I can take just a moment to briefly close. In short, Cameron North's case involves constitutional violations committed both by specific people, as well as massive systemic problems in the Cuyahoga County Jail that inevitably were going to lead to constitutional violations in the provision of inmate health care. And the district court erred in granting summary judgment to the county for the reasons discussed here today. And in the briefs, we ask that you reverse the trial court. Thank you.